# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TED KNOX, # N-92676, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-494-SMY |
| ) | |
| WARDEN BUTLER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Ted Knox is currently incarcerated at Menard Correctional Center ("Menard"). On May 10, 2017, Knox filed this *pro se* civil rights action against 17 defendants pursuant to 42 U.S.C. § 1983. He asserts claims of excessive force, deliberate indifference to medical needs and retaliation, arising from a shakedown at Menard carried out by "Orange Crush" officers on April 14, 2014. He includes an additional claim that his health was endangered by his conditions of confinement at Menard between February 2015 and December 2016.

Knox filed his First Amended Complaint on May 24, 2017 raising yet another claim and adding 20 new defendants. The new claim is for deliberate indifference to a serious dental condition that developed on April 23, 2017, and which is still affecting him. Knox also filed a Motion for Preliminary Injunction (Doc. 8) seeking relief in connection with the dental problem. The First Amended Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the

1

complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). Initially, however, the Court shall consider whether all of Plaintiff's diverse claims against the 37 Defendants may appropriately proceed together in the same case. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007), (unrelated claims against different defendants belong in separate lawsuits); FED. R. CIV. P. 18(a); 20(b); 21.

### The First Amended Complaint (Doc. 7)

Knox's lengthy, but well-organized pleading sets forth 5 distinct claims. Count 1 is for excessive force and medical deliberate indifference. (Doc. 7, pp. 5-7). He states that on April 14, 2014, the Orange Crush tactical unit conducted a shakedown of his cell block during which he was strip-searched, verbally mocked and threatened with segregation and subjected to painful handcuffing procedures that did not comply with his medical double-cuff permit. Defendant Hamilton conducted the search and supervised the cuffing. Hamilton and Orange Crush Supervisor John Doe #1 struck Knox several times with their sticks. Knox was forced to stand for 4 hours in a stress position while cuffed. (Doc. 7, pp. 5-6). Winters struck Knox and yanked his cuffed wrists upward, causing severe pain. Butler and Harrington observed Knox being hit by the other officers, but did nothing to intervene.

Count 2 is for denial of medical care between April 14, 2014 and May 28, 2014. Nurse Walters, Dr. Trost, Nurse Supervisor Crain, and Wexford Health Sources, Inc. are named in connection with this claim. (Doc. 7, pp. 8-9). After the Orange Crush shakedown, Knox's neck, shoulders and back were in pain from the blows he suffered. On April 25, 2014, Walters came to Knox's cell and Knox asked her for medical attention for his pain. She refused, telling him that no examinations would be done until the level-1 lockdown was over. (Doc. 7, p. 8). Knox

received nothing to relieve his pain and continued to plead for medical care. The lockdown ended on May 12, 2014, but Knox was not taken to see Dr. Trost until May 28, 2014. Trost informed him that medical staff must follow the "Administrative Decision" that had been "accepted by us [indicating the medical staff and/or Wexford]," which prohibits inmates from being removed from their cells for medical examination during a level-1 lockdown. (Doc. 7, p. 9).

Count 3 (Doc. 7, pp. 10-13) stems from the grievance Knox filed in June 2014, complaining about the April 14, 2014 Orange Crush incident. On June 10, 2014, Officers Ross and Hecht put Knox in segregation, allegedly for writing the grievance. The segregation cell had no running water and was smeared with feces. Smith refused to move Knox to another cell, refused to give him hygiene supplies and refused to summon medical help after Knox complained of severe headaches that he feared were related to his high blood pressure. (Doc. 7, p. 11). On June 13, 2014, Officer John Doe #2 returned Knox to general population, but told him to stop writing grievances or he would "see him again." (Doc. 7, p. 12).

Count 4 arose in 2015. On February 20, 2015, Knox was moved to the North 2 housing unit, where under heightened security measures, he was required to be handcuffed every time he came out of his cell for his daily insulin shot as well as for doctor or dentist visits. (Doc. 7, pp. 14-18). On April 1, 2015, the windows in Knox's housing unit were open and he smelled a strong odor of environmental tobacco smoke ("ETS"). One window was directly in front of Knox's cell and he could see various prison staff members smoking outside this window. (Doc. 7, p. 14). Smoke also entered the cell through the ventilation openings in the rear of the cell. Knox complained to Butler that the ETS was causing him severe headaches, dizziness and shortness of breath. He worried that the ETS exposure would aggravate his respiratory

condition. At some time in the past, Knox had suffered a partially collapsed lung and had undergone surgery. Butler refused to move Knox to a different cell and threatened him with segregation when he pointed out that Menard is supposed to be a smoke-free environment. Knox continued to complain to Butler, Brooks, Lashbrooks, Best, Susler and Watkins about the daily ETS exposure. He was not moved and Susler refused to close the windows where the smoke was coming in. (Doc. 7, pp. 15-16). The ETS exposure continued until at least September 14, 2015. (Doc. 7, p. 16). The First Amended Complaint suggests that the problem recurred in 2016. Sometime after April 11, 2016, Dr. Trost refused to issue Knox a medical permit for an extra fan to help clear the smoke, despite Knox's symptoms. (Doc. 7, p. 17). Knox was finally moved to another housing location on or about December 15, 2016. (Doc. 7, p. 18).

Count 5 arose on April 23, 2017. (Doc. 7, pp. 19-39). Knox began having problems with one of his front teeth and submitted a request for urgent dental care. Knox takes insulin shots and oral medication (Metformin) for diabetes twice each day, and takes blood pressure medication daily. (Doc. 7, p. 19). Over the next several days, Knox's tooth became very painful when he tried to eat, talk or brush his teeth. The pain caused him to lose sleep and interfered with his daily activities. Knox's mouth became infected and he was spitting out blood and pus daily. (Doc. 7, p. 20). The tooth became loose and was dangling in his mouth. On April 30, 2017, Knox woke up to find blood all over his pillow.

Over the ensuing weeks, Knox submitted additional medical requests. He also showed his dangling tooth and described his symptoms to numerous nurses who came to his cell, and he asked them for pain medication. The nurses, each of whom refused to help Knox or to give him anything for his pain, include Shellby, Laing, Tripp, Martha, Brenda, Mall, Chatten, Marshall, Megee, Keisha, Suzy, Ron, John Doe #3 and Gregson (Doc. 7, pp. 20-29). Ron told Knox that

Wexford was on a budget and offered to go get pliers to yank out the tooth. (Doc. 7, p. 24). Knox also asked Lt. Lee for help to get medical/dental treatment, but Lee refused to take any action. (Doc. 7, p. 23).

On or about May 10, 2017, Knox wrote an emergency grievance to Warden Lashbrooks over the denial of dental care, but he never received a response. (Doc. 7, pp. 25, 31). On May 13, 2017, after Knox requested a crisis team, he was taken to see McWilliams (mental health staff). Knox told McWilliams about his pain and dangling tooth, for which he had been seeking care since April 23, 2017. McWilliams promised that he would make a referral to the dentist, but failed to do so. (Doc. 7, p. 27).

On May 18, 2017, Knox's tooth completely broke off and bled profusely. (Doc. 7, p. 29). He was rushed to the Health Care Unit where a dental assistant applied gauze to stop the bleeding. Osemeyer (dentist) told Knox that he would never be placed on an emergency call line for dental care and would remain at the back of the line as long as Knox kept those teeth in his mouth. *Id.* Osemeyer refused to give Knox a partial or an MRI and said the only treatment Knox would get was to have all his teeth extracted. Knox did receive antibiotics to treat the abscess and ibuprofen for the pain. (Doc. 7, pp. 29-30).

Along with the First Amended Complaint, Knox filed a Motion for Preliminary Injunction (Doc. 8), in which he seeks testing and/or treatment for his ongoing mouth infection and abscess.

## Discussion

Based on the allegations of the First Amended Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of

5

this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Eighth Amendment claim against Hamilton, Winters, Butler, Harrington, and Supervisor John Doe #1, for subjecting Knox to a humiliating strip search, excessive force, and for deliberate indifference to Knox's medical needs arising from the blows he sustained, on April 14, 2014;

**Count 2:** Eighth Amendment claim for deliberate indifference to medical needs, against Trost, Crain, Walters, and Wexford Health Sources, Inc., for delaying and denying medical care to Knox after the April 14, 2014, incident of excessive force;

**Count 3:** First Amendment retaliation claim, and Eighth Amendment claim for placing Knox in an unsanitary segregation cell in June 2014 after Knox filed a grievance over the April 2014 Orange Crush shakedown, against Ross, Hecht, Smith, and Officer John Doe #2;

**Count 4:** Eighth Amendment deliberate indifference claim, and First Amendment retaliation claim, against Butler, Watkins, Susler, Best, Brooks, Trost, and Lashbrooks, for subjecting Knox to tobacco smoke exposure between April 2015 and December 2016;

**Count 5:** Eighth Amendment claim for deliberate indifference to serious dental needs, against Mall, Laing, Marshall, Chatten, Tripp, Williams, Gregson, Megee, Osemeyer, Ron, Oswald, Suzy, Martha, Brenda, Keisha, Shellby, Nurse John Doe #3, Lee, McWilliams, Lashbrooks, and Wexford Health Sources, Inc., for denying and delaying care for Knox's abscessed and infected tooth, in April and May 2017.

Counts 1 and 2 will remain in this action. However, for the reasons explained below, Count 3 shall be severed into a separate action pursuant to *George v. Smith* and an additional filing fee will be imposed for the new case. Counts 4 and 5 will be severed into two more separate actions pursuant to Federal Rules of Civil Procedure 20(b) and 21. No additional fee will be assessed at this time for those 2 severed cases.

A plaintiff may join all his or her claims against a single defendant in one action, even if the claims are factually unrelated. FED. R. CIV. P. 18(a). Further, a plaintiff may join multiple

6

defendants in one case, so long as:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and*
>
> (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2) (emphasis added). However, even if this provision is satisfied with respect to the joinder of defendants, the Court has discretion to require the claims to proceed separately if joinder would cause "prejudice, expense, or delay." *See Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001) (district courts are given "wide discretion . . . concerning the joinder of parties") (citing *Intercon Research Assoc., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982)); FED. R. CIV. P. 20(b). "This discretion allows a trial court to consider, in addition to the requirements of Rule 20, 'other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness.'" *Chavez*, 251 F.3d at 632 (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

In Knox's case, each of the 5 counts involves a distinct group of defendants with very little overlap. Only 4 of the 37 defendants are named in connection with more than one claim: Butler is named in Counts 1 and 4; Trost is named in Counts 2 and 4; Wexford Health Sources is named in Counts 2 and 5; and Lashbrooks is named in Counts 4 and 5. Furthermore, the claims in Counts 4 and 5 did not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as the claims in Counts 1 and 2 or those in Count 3, and Counts 4 and 5 are not legally or factually related to Counts 1, 2 or 3. The tobacco-smoke exposure complained of in Count 4 began in April 2015 – one full year after the April 2014 Orange Crush shakedown in Counts 1 and 2. And the tooth abscess claim in Count 5 did not arise until April

7

2017 – separated in time from Counts 1 and 2 by 3 years, and from Count 4 by approximately 6 months (dating from the end of the smoke exposure).

Were it not for the common defendants (Butler, Trost, Wexford and Lashbrooks), Counts 4 and 5 would also be subject to severance pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), which directs that a court should sever unrelated claims against different defendants into separate lawsuits.[1] *George* also instructs that severance is appropriate "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b), (g)). Count 3 clearly requires severance as it involves 4 defendants who are not named in any of the other counts and the claims in Count 3 are factually and legally distinct from each of the other claims.[2]

The inclusion of Counts 4 and 5 in the same lawsuit as Counts 1 and 2 runs afoul of the Seventh Circuit's admonition that "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). The joinder of these claims technically complies with the Rule 18 provision allowing the inclusion of all claims against a party in one suit. However, this factor is outweighed by the likely prejudice and delay that will be imposed on the majority of the remaining 33 defendants, who would be forced to contend with cumbersome scheduling, discovery and other pre-trial and case management matters relating to claims that have nothing to do with them. Principles of fundamental fairness dictate that the factually related claims in

---

[1] If the Court determines during the § 1915A merits review that any of these 4 parties was improvidently named in connection with more than one count, *George* severance may be appropriate, which would result in an additional filing fee for claims severed pursuant to *George*.

[2] While the retaliatory action in Count 3 was allegedly triggered by a grievance filed over the Orange Crush raid described in Count 1, this connection is not enough to link the different parties in the same action under Rule 20 (a)(2). Count 3 is based on a different set of transactions and occurrences, and the factual and legal issues relating to the parties in Count 3 are entirely distinct from those in Counts 1 and 2.

Counts 1 and 2 should remain together, but the distinct claims in Counts 4 and 5 should not proceed in the same suit as Counts 1 and 2. Moreover, severance of Knox's recently added Count 4 into a separate action will facilitate the timely handling of his motion for preliminary injunction.

For these reasons, the Court will sever the claims that are unrelated to Counts 1 and 2 into separate actions and Counts 1 and 2 shall remain in this action under Case No. 17-cv-494-SMY. Counts 3, 4, and 5 will each be severed into a separate case, and the Clerk shall open a new case with a newly-assigned case number for each of these 3 claims. Because Count 3 is being severed pursuant to *George*, Knox will be assessed another filing fee for that severed case. However, because the principles of *George* do not appear to apply to Counts 4 and 5 at this juncture, no new filing fee will be assessed for those 2 severed cases at this time. Severance of Counts 4 and 5 is being made pursuant to Federal Rules of Civil Procedure 20(b) and 21.

Each of these newly-severed cases will undergo preliminary review pursuant to § 1915A after the new case number and judge assignment has been made. The Court will conduct the § 1915A review on Counts 1 and 2, which remain in this case, in a separate order.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff's claims in **COUNTS 3, 4, and 5** are **SEVERED** into 3 new cases, as follows:

> **First Severed Case:** Count 3, including a First Amendment retaliation claim and an Eighth Amendment claim for placing Knox in an unsanitary segregation cell in June 2014 after Knox filed a grievance over the April 2014 Orange Crush shakedown, against Ross, Hecht, Smith, and Officer John Doe #2;
>
> **Second Severed Case:** Count 4, including an Eighth Amendment deliberate indifference claim and a First Amendment retaliation claim, against Butler, Watkins, Susler, Best, Brooks, Trost, and Lashbrooks, for subjecting Knox to tobacco smoke exposure between April 2015 and December 2016;

**Third Severed Case:** Count 5, an Eighth Amendment claim for deliberate indifference to serious dental needs, against Mall, Laing, Marshall, Chatten, Tripp, Williams, Gregson, Megee, Osemeyer, Ron, Oswald, Suzy, Martha, Brenda, Keisha, Shellby, Nurse John Doe #3, Lee, McWilliams, Lashbrooks, and Wexford Health Sources, Inc., for denying and delaying care for Knox's abscessed and infected tooth, in April and May 2017.

The claims in each newly severed case shall be subject to merits review pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In each new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order
(2) The First Amended Complaint (Doc. 7)

In addition, the Clerk is **DIRECTED** to file the following document in the **First Severed Case (Count 3) only:**

- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

Finally, the Clerk is **DIRECTED** to file the following document in the **Third Severed Case (Count 5) only:**

- Plaintiff's motion for preliminary injunction (Doc. 8). The motion at Doc. 8 shall be **TERMINATED** in Case No. 17-cv-494-SMY.

Plaintiff **will be responsible for an additional $350.00 filing fee** in the First Severed Case (Count 3). No additional fee shall be assessed at this time for the Second Severed Case or the Third Severed Case.

No service shall be ordered on the Defendants in this case or in the severed cases until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are COUNT 1 and COUNT 2*, in relation to the Orange Crush shakedown, strip search, excessive force, and denial/delay of medical attention pursuant to the events of April 14, 2014. This case

shall now be captioned as: **TED KNOX, Plaintiff, vs. WARDEN BUTLER, WARDEN HARRINGTON, KENNETH HAMILTON, WINTERS, SUPERVISOR JOHN DOE #1, JOHN TROST, ANGELA CRAIN, WALTERS, and WEXFORD HEALTH SOURCES, INC., Defendants.**

**IT IS FURTHER ORDERED** that Defendants **WARDEN WATKINS, OFFICER JOHN DOE #2, J. HECHT, SUSLER, ROSS, J. SMITH, BEST, WARDEN BROOKS, WARDEN LASHBROOKS, NURSE MALL, NURSE LAING, NURSE MARSHALL, NURSE CHATTEN, NURSE TRIPP, NURSE WILLIAMS, NURSE GREGSON, NURSE MEGEE, DR. OSEMEYER, NURSE RON, DR. OSWALD, NURSE SUZY, NURSE MARTHA, NURSE BRENDA, NURSE KEISHA, NURSE SHELLBY, NURSE JOHN DOE #3, LT. LEE, and McWILLIAMS** are **TERMINATED** from *this* action with prejudice.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 31, 2017**

s/ STACI M. YANDLE
United States District Judge
